UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

JOHN W. LEBRON

CASE NO. 8:10-CR- 258 33 AEP
18 U.S.C. § 1014 and 2
18 U.S.C. § 982(a)(2)-forfeiture



### INDICTMENT

The Grand Jury charges:

### COUNT ONE
(Loan and Credit Application Fraud - 18 U.S.C. §§ 1014 and 2)

#### A. Introduction

1. The Federal Deposit Insurance Corporation ("FDIC") was an agency of the United States of America, established to protect depositors against substantial loss with the purpose of preventing bank collapse and instilling public confidence in the nation's banks.

2. World Savings Bank, F.S.B., was a financial institution, the accounts of which were FDIC-insured.

3. It was the practice of the above-named financial institution to make loans secured by real property, known as mortgages. It was the practice of the financial institution to rely upon the information contained in a borrower's mortgage-related applications in determining whether or not to approve such a loan.

## B. The Charge

4. On or about August 19, 2005, at Tampa, in the Middle District of Florida,

JOHN W. LEBRON,

defendant herein, for the purpose of influencing the actions of the World Savings Bank, F.S.B., a financial institution whose accounts were FDIC-insured, upon an application, commitment, and loan in the amount of $150,000, applied for and received by John W. Lebron for purchase of a house located at 2604 West Auburn Avenue, Tampa, Florida 33614, did knowingly make and cause to be made false statements, in that the defendant stated and represented, and caused to be stated and represented:

- (a) on a Uniform Residential Loan Application (Fannie Mae Form 1003), that:
    - (i) John W. Lebron's current employer was listed as "Hair Care" located at 6804 Armenia Avenue, Tampa, Florida;
    - (ii) John W. Lebron had been employed with this employer for five (5) years;
    - (iii) John W. Lebron had been a hair stylist professional for seven (7) years;
    - (iv) John W. Lebron listed his base income from his employment with that job as $3,750.00 per month;
    - (v) John W. Lebron was not then a party to a lawsuit;
    - (vi) the property would be his primary residence;
    - (vii) no part of the down payment was borrowed; and
    - (viii) in the section regarding details of the transaction, John W. Lebron would put into the transaction $51,784.62; and
- (b) on a U.S. Department of Housing and Urban Development Settlement Statement (HUD-1), that:

     (i) according to Line 303, John W. Lebron was putting $46,676.78 into the transaction; and

  (c) from the mortgage itself, that:

     (i) the entire down payment was from the borrower's own funds;

     (ii) the mortgage property was going to be John W. Lebron's primary residence;

     (iii) John W. Lebron was going to occupy the property no later than thirty days after the recording of the mortgage; and

     (iv) John W. Lebron was going to use the property as his residence for at least twelve (12) months from the date of the recording of the mortgage,

whereas, in truth and fact as the defendant then and there well knew,

  (a) John W. Lebron's current employer was not "Hair Care";

  (b) John W. Lebron had not been employed by "Hair Care" for the proceeding five (5) years;

  (c) John W. Lebron had not been a hair stylist professional for seven (7) years;

  (d) John W. Lebron's base income from his employment with "Hair Care" was not $3,750;

  (e) John W. Lebron was a party to a lawsuit;

  (f) the property was not going to be his primary residence;

  (g) John W. Lebron had borrowed part of the down payment;

  (h) John W. Lebron did not put into the transaction $51,784.62 of his own money;

  (i) John W. Lebron did not put into the transaction $46,676.78 of his own money;

  (j) the entire down payment was not from borrower's own funds;

3

    (h)    the mortgage property was not going to be John W. Lebron's primary residence;

    (i)    John W. Lebron was not going to occupy the property no later than thirty days after the recording of the mortgage; and

    (j)    John W. Lebron was not going to use the property as his primary residence for at least twelve (12) months from the date of the recording of the mortgage.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT TWO
(Loan and Credit Application Fraud - 18 U.S.C. §§ 1014 and 2)

### A. Introduction

5. IndyMac Bank, F.S.B., was a financial institution, the accounts of which were FDIC-insured.

6. It was the practice of the above-named financial institution to make loans secured by real property, known as mortgages. It was the practice of the financial institution to rely upon the information contained in a borrower's mortgage-related applications in determining whether or not to approve such a loan.

### B. The Charge

7. On or about March 22, 2006, at Tampa, in the Middle District of Florida,

JOHN W. LEBRON,

defendant herein, for the purpose of influencing the actions of the IndyMac Bank, F.S.B., a financial institution whose accounts were FDIC-insured, upon an application, commitment, and loan in the amount of $440,000, applied for and received by John W. Lebron for purchase of a home located at 3006 River Grove Drive, Tampa, Florida 33610, did knowingly make and cause to be made false statements, in that the

defendant stated and represented, and caused to be stated and represented on a Uniform Residential Loan Application (Fannie Mae Form 1003), that:

- (a) John W. Lebron worked for First Choice Financial for two years and three months;
- (b) John W. Lebron was a "Loan Officer";
- (c) John W. Lebron's base income was $8,739 per month; and
- (d) John W. Lebron was not then a party to a lawsuit;

whereas, in truth and fact as the defendant then and there well knew,

- (a) John W. Lebron had not worked for First Choice Financial for two years and three months;
- (b) John W. Lebron was not a Loan Officer;
- (c) John W. Lebron's base income was substantially less than $8,739 per month;
- (d) John W. Lebron was then a party to a lawsuit.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT THREE
(Loan and Credit Application Fraud - 18 U.S.C. §§ 1014 and 2)

8. On or about May 1, 2006, at Tampa, in the Middle District of Florida,

JOHN W. LEBRON,

defendant herein, for the purpose of influencing the actions of the IndyMac Bank, F.S.B., a financial institution whose accounts were FDIC-insured, upon an application, commitment, and loan in the amount of $440,000, applied for and received by John W. Lebron for purchase of a home located at 3006 River Grove Drive, Tampa, Florida 33610, did knowingly make and cause to be made false statements, in that the defendant stated and represented, and caused to be stated and represented on a U.S.

5

Department of Housing and Urban Development Settlement Statement (HUD-1), that:

    (a)    Cash to the Seller (Line 603) was $413,807.89;

whereas, in truth and fact as the defendant then and there well knew,

    (a)    the seller received substantially less than $413,807.89.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FOUR
(Loan and Credit Application Fraud - 18 U.S.C. §§ 1014 and 2)

9.    On or about August 17, 2006, at Tampa, in the Middle District of Florida,

**JOHN W. LEBRON,**

defendant herein, for the purpose of influencing the actions of the World Savings Bank, F.S.B., a financial institution whose accounts were FDIC-insured, upon an application, commitment, and loan in the amount of $200,000, applied for and received by John W. Lebron for purchase of home located at 2604 West Auburn Avenue, Tampa, Florida 33614, did knowingly make and cause to be made false statements, in that the defendant stated and represented, and caused to be stated and represented:

    (a)    on a World Savings Residential Loan Application, that:

        (i)    the property would be John W. Lebron's primary residence;

        (ii)    John W. Lebron's present address was 2604 West Auburn Avenue, Tampa, Florida 33614;

        (iii)    John W. Lebron worked for First Choice Realty for two years and three months;

        (iv)    John W. Lebron's total income was $5,350 per month;

        (v)    John W. Lebron had $55,000 in Checking & Savings;

        (vi)    3006 River Grove Drive, Tampa, Florida 33610 was a duplex rental;

    (vii) the gross monthly rental income from 3006 River Grove Drive, Tampa, Florida 33610 was $4,500;

  (b) from the mortgage itself, that:

    (i) the mortgage property will be John W. Lebron's primary residence;

    (ii) John W. Lebron will occupy the property no later than thirty days after the recording of the mortgage; and

    (iii) John W. Lebron will use the property as his residence for at least twelve (12) months from the date of the recording of the mortgage;

whereas, in truth and fact as the defendant then and there well knew,

  (a) the property was not going to be his primary residence;

  (b) John W. Lebron's present address was not 2604 West Auburn Avenue, Tampa, Florida 33614;

  (c) John W. Lebron had not worked for First Choice Realty for two years and three months;

  (d) John W. Lebron's total income was substantially less than $5,350 per month;

  (e) John W. Lebron had substantially less than $55,000 in Checking & Savings;

  (f) 3006 River Grove Drive, Tampa, Florida 33610 was not a duplex rental;

  (g) the gross monthly rental income from 3006 River Grove Drive, Tampa, Florida 33610 was not $4,500;

  (h) the mortgage property was not going to be John W. Lebron's primary residence;

  (i) John W. Lebron was not going to occupy the property no later than thirty days after the recording of the mortgage; and

7

(j)  John W. Lebron was not going to use the property as his primary residence for at least twelve (12) months from the date of the recording of the mortgage.

In violation of Title 18, United States Code, Sections 1014 and 2.

### COUNT FIVE
(Loan and Credit Application Fraud - 18 U.S.C. §§ 1014 and 2)

#### A. Introduction

10. Citibank, N.A., was a financial institution, the accounts of which were FDIC-insured.

11. It was the practice of the above-named financial institution to make loans secured by real property, including home equity lines of credit. It was the practice of the financial institution to rely upon the information contained in a borrower's loan-related applications in determining whether or not to approve such home equity lines of credit.

#### B. The Charge

12. On or about January 10, 2007, at Tampa, in the Middle District of Florida,

JOHN W. LEBRON,

defendant herein, for the purpose of influencing the actions of the Citibank, N.A., a financial institution whose accounts were FDIC-insured, upon an application, commitment, and loan in the amount of $325,900, applied for and received by John W. Lebron for a home equity loan related to 3006 River Grove Drive, Tampa, Florida 33610, did knowingly make and cause to be made false statements, in that the defendant stated and represented, and caused to be stated and represented on a Uniform Residential Loan Application (Fannie Mae Form 1003), that:

(a)  John W. Lebron had worked for First Choice Realty for two years;

    (b) John W. Lebron's total income was $18,000 per month;

whereas, in truth and fact as the defendant then and there well knew,

    (a) John W. Lebron had not worked for First Choice Realty for two years;

    (b) John W. Lebron's total income was substantially less than $18,000 per month.

In violation of Title 18, United States Code, Sections 1014 and 2.

## FORFEITURES

1. The allegations contained in Counts One through Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(2).

2. From his engagement in the violations alleged in Counts One through Five of this Indictment, punishable by imprisonment for more than one year, the defendant

### JOHN W. LEBRON

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds he obtained directly or indirectly, as a result of such violations. The specific property to be forfeited includes, but is not limited to, a sum of money representing the amount of proceeds the defendant obtained as a result of the offenses, which amount shall be determined by the court at or before sentencing.

3. If any of the property described above, as a result of any act or omission of the defendant:

9

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

*Kim C. Godbee*
Foreperson

A. BRIAN ALBRITTON
United States Attorney

By: _____
Thomas N. Palermo
Assistant United States Attorney

By: _____
Robert T. Monk
Assistant United States Attorney
Deputy Chief, Economic Crimes Section

FORM OBD-34
APR 1991

No. _____

# UNITED STATES DISTRICT COURT

Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

John W. Lebron

## INDICTMENT

Violations:

18 U.S.C. § 1014

A true bill,

*Kim C. Goodlee*
Foreperson

Filed in open court this 23rd day

of June, 2010.

_____ Clerk

Bail $ _____

GPO 863 525